

# Buchanan County Sheriff's Office

**JOHN MCCLANAHAN**
Sheriff

P.O. Box 90 • 1327 Lovers Gap Road
**VANSANT, VIRGINIA 24656**
Email: john.mcclanahan@buchanancounty-va.gov

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

**Telephone (276)**
**935-2313**
**935-2056**
**935-2567**

February 14, 2020

FEB 20 2020 **Fax: (276) 935-2777**
JULIA C. DUDLEY, CLERK **Fax: (276) 935-2083**
BY:
DEPUTY CLERK

*Certified Mail#: 7014 2120 0003 3389 4658*

Ms. Julia C. Dudley, Clerk of Court
United States District Court for the
Western District of Virginia
Roanoke Division
210 Franklin Rd. S.W. Suite 540
Roanoke, VA 24011

RE:     Ronald Dean Cantrell vs Haysi Regional Jail, et al
        Civil Action No: 7:19-cv00470

Dear Ms. Dudley:

I'm in receipt of a Notice of a Lawsuit and Request to Waive Service of a Summon for the above
case for Sheriff Ray Foster. Sheriff Ray Foster is no longer Sheriff of Buchanan County.
Therefore, I cannot accept this lawsuit on his behalf.  I have enclosed the lawsuit for proper
service.

Should you have any questions, please feel free to call.

Sincerely yours,

John McClanahan, Sheriff

JM/skt

Encl

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

| | | |
|---|---|---|
| Ronald Dean Cantrell | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 7:19-cv-00470 |
| Haysi Regional Jail, et al | ) | |
| *Defendant* | ) | |

FEB 1 0 2020

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To: Sheriff Ray Foster

*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within 30 days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: 02/06/2020

Ronald Dean Cantrell (By Deputy Clerk)
*Signature of the attorney or unrepresented party*

-THIS IS THE REQUEST FOR WAIVER-
IF YOU ARE A NAMED DEFENDANT AND WISH
TO WAIVE FORMAL SERVICE, YOU MUST SIGN
AND RETURN THE SECOND PAGE ENCLOSED
***DO NOT SIGN AND RETURN THIS PAGE
IF YOU ARE WAIVING SERVICE***

*Printed name*

*Address*

*E-mail address*

*Telephone number*

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT

for the

Western District of Virginia

| | |
|---|---|
| Ronald Dean Cantrell | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 7:19-cv-00470 |
| Haysi Regional Jail, et al | ) |
| *Defendant* | ) |

## WAIVER OF THE SERVICE OF SUMMONS

To: Ronald Dean Cantrell

*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____ 02/06/2020 _____ , the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

_____
*Signature of the attorney or unrepresented party*

_____
*Printed name of party waiving service of summons*

_____
*Printed name*

_____
*Address*

***SIGN AND RETURN THIS PAGE IF YOU
ARE A NAMED DEFENDANT AND WISH TO
WAIVE FORMAL SERVICE***

_____
*E-mail address*

_____
*Telephone number*

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.



AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
### for the
### Western District of Virginia

| | | |
|---|---|---|
| Ronald Dean Cantrell | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   7:19-cv-00470 |
| Haysi Regional Jail, et al | ) | |
| *Defendant* | ) | |

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To:  Sheriff Ray Foster

*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within   30   days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court  The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date:     02/06/2020

Ronald Dean Cantrell (By Deputy Clerk)
*Signature of the attorney or unrepresented party*

-THIS IS THE REQUEST FOR WAIVER-
IF YOU ARE A NAMED DEFENDANT AND WISH
TO WAIVE FORMAL SERVICE, YOU MUST SIGN
AND RETURN THE SECOND PAGE ENCLOSED
***DO NOT SIGN AND RETURN THIS PAGE
IF YOU ARE WAIVING SERVICE***

*Printed name*

*Address*

*E-mail address*

*Telephone number*

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT

for the

Western District of Virginia

| | |
|---|---|
| Ronald Dean Cantrell<br>*Plaintiff*<br>v.<br>Haysi Regional Jail, et al<br>*Defendant* | )<br>)<br>)  Civil Action No.  7:19-cv-00470<br>)<br>) |

## WAIVER OF THE SERVICE OF SUMMONS

To:  Ronald Dean Cantrell
       *(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____02/06/2020_____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

_____
*signature of the attorney or unrepresented party*

_____
*Printed name of party waiving service of summons*

_____
*Printed name*

_____
*Address*

\*\*\*SIGN AND RETURN THIS PAGE IF YOU
ARE A NAMED DEFENDANT AND WISH TO
WAIVE FORMAL SERVICE\*\*\*

_____
*E-mail address*

_____
*Telephone number*

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

RONALD DEAN CANTRELL,          Civil Action No. 7:19-cv-00470
    Plaintiff,

                         ORDER TO SERVE AND
v.                        COLLECT FEE

HAYSI REGIONAL JAIL, ET AL,    By:   Robert S. Ballou
    Defendant(s).                 United States Magistrate Judge

The court previously assessed a filing fee in this prisoner civil rights case, and plaintiff

returned an executed Inmate Consent to Withholding form. Accordingly, it is now

**O R D E R E D**

as follows:

1.   Plaintiff is **GRANTED** leave to proceed in forma pauperis to the extent plaintiff does not

    pay for service of process and may pay the filing fee via installments.

2.   The Clerk shall cause the defendant(s) to be notified of this action, pursuant to Rule 4 of the

    Federal Rules of Civil Procedure.

3.   The Clerk is directed to forward a copy of plaintiff's signed consent to withholding form to

    the Trust Accounts Officer at plaintiff's current place of confinement.

4.   The collection of the $350.00 fee shall commence. The Trust Accounts Officer at plaintiff's

    current place of confinement, and at all subsequent places of confinement, is hereby

    authorized to collect the fees as agreed to by plaintiff on the signed consent form, and to

    remit such fees in accordance with 28 U.S.C. § 1915(b). The Trust Accounts Officer at

    plaintiff's present institution is requested to place the signed consent to withholding form in

    plaintiff's file so that it might accompany the inmate in the event of his transfer. Should

    plaintiff be transferred to another institution, the balance due for the civil action will be

    inserted in plaintiff's file so that the appropriate officer at the next institution will remit the

debt owed to the Clerk, U.S. District Court, 210 Franklin Road SW, Suite 540, Roanoke, Virginia 24011-2208. The Trust Accounts Officer is requested to reference the case number of this action on payments sent to the court.

5.   Parties are advised that briefs, motions, and responses thereto shall be filed in compliance with the Federal Rules of Civil Procedure and the court's Local Rules.

6.   Plaintiff shall notify the court immediately upon plaintiff's release or transfer and shall provide a new address. FAILURE TO NOTIFY THE COURT OF SUCH A CHANGE OF ADDRESS IN WRITING WILL RESULT IN THE DISMISSAL OF THIS CASE.

7.   Parties are advised that, pursuant to a Standing Order of Court, all non-dispositive matters in this case will be referred to a United States Magistrate Judge.

8.   The Clerk shall send a copy of this Order to plaintiff.

Enter:  This  6th  day of February, 2020.

s/Robert S. Ballou
United States Magistrate Judge

A TRUE COPY, TESTE:
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK



UNITED STATES POSTAGE
PITNEY BOWES
02 1P $008.25⁰
FEB 18 2020
MAILED FROM ZIP CODE 24656



**Buchanan County Sheriff's Off**

P.O. Box 90 ● 1327 Lovers Gap Road
VANSANT, VIRGINIA 24656

JOHN MCCLANAHAN
Sheriff

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**®



7014 2120 0003 3389 4658

Ms. Julia C. Dudley, Clerk of Court
United States District Court for the
Western District of Virginia
Roanoke Division
210 Franklin Rd. S.W. Suite 540
Roanoke, VA  24011

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **RONALD DEAN CANTRELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 7:19-cv-00470** |
| | ) | |
| **CHARLES MCCOY,** | ) | |
| | ) | |
| **SOUTHWEST VIRGINIA** | ) | |
| **REGIONAL JAIL AUTHORITY,** | ) | |
| | ) | |
| **SERGEANT BRANDON HALL,** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **SHERIFF RAY FOSTER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, Ronald Dean Cantrell, brings this complaint under 42 U.S.C. § 1983 and state law for damages resulting from being locked in a transport van in excessive heat with no water and little air for approximately two hours, in violation of his rights under the Fourteenth Amendment of the United States Constitution. In support thereof, Plaintiff states as follows:

## JURISDICTION AND VENUE

1.     This court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and 1367.

2.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b), as the events and omissions giving rise to Plaintiff's claim occurred in the Western District of Virginia.

## PARTIES

3.      Plaintiff Ronald Dean Cantrell (hereinafter "Plaintiff") is pretrial detainee (prisoner no. 10200905) incarcerated at Abingdon Regional Jail in Abingdon, Virginia. At all relevant times, Plaintiff was a pretrial detainee incarcerated at Haysi Regional Jail in Haysi, Virginia.

4.      Defendant Charles McCoy (hereinafter "McCoy") was, at all relevant times, an officer at Haysi Regional Jail. At all relevant times, Defendant McCoy was acting in the course and scope of his employment and under color of state law. Upon information and belief, McCoy is the son of Captain Patricia McCoy, who is also an officer at Haysi Regional Jail.

5.      Defendant Southwest Virginia Regional Jail Authority (hereinafter "Jail Authority") was created by the Counties of Buchanan, Dickenson, Lee, Russell, Scott, Smyth, Tazewell, Washington, and Wise, Virginia, and the City of Norton, Virginia, pursuant to Virginia Code § 53.1-95.2. The Jail Authority operates several facilities, including both Abingdon Regional Jail and Haysi Regional Jail. At all relevant times, Defendant Jail Authority employed Defendant McCoy.

6.      Defendant Sergeant Brandon Hall (hereinafter "Hall") is and was, at all relevant times, a sergeant with the Buchanan County Sheriff's Office. At all relevant times, Defendant Hall was acting in the course and scope of his employment and under color of state law.

7.      Defendant Sheriff Ray Foster (hereinafter "Sheriff") is the Sheriff of Buchanan County, Virginia, and as such the head of its Sheriff's Office. At all relevant times, Defendant Hall worked directly under Defendant Sheriff and was employed by the Buchanan County Sheriff's Office.

## STATEMENT OF FACTS

8.      At all relevant times, Plaintiff was a pretrial detainee incarcerated at Haysi Regional

Jail in Haysi, Virginia. Haysi Regional Jail is operated by Defendant Jail Authority.

9.      On the morning of May 22, 2019, Plaintiff and nine of his fellow inmates at Haysi

Regional Jail were transported to a courthouse in Grundy, Virginia, via a transport van driven by

an officer at Haysi Regional Jail, Defendant McCoy.

10.      Once the inmates' business at the courthouse concluded by the early afternoon,

they, including Plaintiff, were loaded into the same transport van being driven by Defendant

McCoy.

11.      Defendant McCoy, however, did not drive directly back to Haysi Regional Jail.

Rather, Defendant McCoy stopped at the Buchanan County Sheriff's Office located in Vansant,

Virginia.

12.      Despite the fact that it was very hot that afternoon, Defendant McCoy got out of

the vehicle, shut the windows, locked the doors, and told the inmates he would be back. Defendant

McCoy, however, took approximately 30 to 40 minutes to return.

13.      Upon information and belief, on the afternoon of May 22, 2019, the weather in

Vasant, Virginia, was approximately 84 degrees Fahrenheit and sunny. However, inside the

transport van, which was made of metal and which had all of its doors and windows shut, the

temperature was much hotter, ranging, upon information and belief, from at least 90 degrees

Fahrenheit to potentially 140 degrees Fahrenheit, rising with time.[1]

---

[1] It is a well-known fact that temperatures quickly rise in vehicle interiors. According to
the Centers for Disease Control and Prevention—a United States agency—when temperatures
outside range from 80 degrees Fahrenheit to 100 degrees Fahrenheit, the temperature inside a
vehicle parked in direct sunlight can quickly climb to between 130 degrees Fahrenheit to 172
degrees Fahrenheit, rising most quickly during the first 15 minutes that it is left in the sun. *See*
**Exhibit A**.

3

14.     In the approximately 30 to 40 minutes that elapsed between Defendant McCoy leaving the vehicle and returning, Plaintiff and his fellow inmates suffered in inhumane conditions, specifically, the excessive heat which was exacerbated by the fact that Plaintiff and his fellow inmates, totaling ten persons, were locked inside of a metal transport van with all its windows shut and without any drinking water. Throughout this period of time, Plaintiff and his fellow inmates began sweating, getting sick, and seeing spots due to the excessive heat. Plaintiff, in particular, suffered extreme anxiety and emotional distress due not only to being confined in the excessively and inhumanely hot transport van, but also because he was and is prone to seizures; Plaintiff suffered headaches and felt as if he was going to pass out.

15.     As a consequence of the excessive heat inside the vehicle, Plaintiff and his fellow inmates began to scream, begging for help. Defendant McCoy then emerged from the Sheriff's office—but he did not help Plaintiff and his fellow inmates. Rather, as they screamed and pounded on the windows for air, water, or any reprieve whatsoever from their excessive and inhumane conditions inside the unbearably hot transport van, Defendant McCoy briefly opened the transport van's side door, and told them to "shut up" and that there was no water inside the Buchanan County Sheriff's Office. Defendant McCoy then closed the side door and briefly opened the front door, for approximately one to two minutes, primarily to charge his mobile phone, before shutting the front door of the vehicle again. The windows of the transport van remained closed this entire time.

16.     Accompanying Defendant McCoy was Defendant Hall, a sergeant with the Buchanan County Sheriff's Office. Defendant Hall did not assist Plaintiff or his fellow inmates, who were all suffering due to the excessive heat inside the vehicle. Instead, Defendant Hall taunted the inmates, including Plaintiff, by holding a soft drink to the window of the vehicle.

4

17.     Defendant McCoy and Defendant Hall then returned inside the Buchanan County Sheriff's Office, leaving Plaintiff and his fellow inmates inside the transport van for another period of approximately 30 to 40 minutes.

18.     Again, Plaintiff and his fellow inmates began sweating, getting sick, and seeing spots due to the excessive heat. Again, Plaintiff, in particular, suffered extreme anxiety due not only to being confined in the excessive heat, but also because he was and is prone to seizures. Again, throughout this period, Plaintiff felt as if he was going to pass out and suffered headaches.

19.     As before, Defendant McCoy eventually returned and opened the front door for approximately one to two minutes to charge his mobile phone, but then closed the front door and left Plaintiff and his fellow inmates inside the transport van for another period of approximately 30 to 40 minutes.

20.     As with the first two periods of being locked in the transport van, Plaintiff and his fellow inmates began sweating, getting sick, and seeing spots due to the excessive heat. Again, Plaintiff, in particular, suffered extreme anxiety due not only to being confined in the excessive heat, but also because he was and is prone to seizures. Again, throughout this period, Plaintiff felt as if he was going to pass out and suffered headaches.

21.     Altogether, Plaintiff and his fellow inmates spent approximately two hours locked inside of the transport van, inhumanely confined in a small, excessively hot space, without any access to water. Throughout those two hours, Plaintiff feared he would suffer a heat stroke, and, in addition to the extreme discomfort and pain and suffering of the excessive heat, felt headaches and began seeing spots. Further, Plaintiff's anxiety throughout those two hours was exacerbated by the fact that he is prone to seizures.

22.     The events described above in paragraphs 10–21 occurred on the afternoon of May 22, 2019; as in inmate, Plaintiff was not aware of the exact time, but estimates the events as having occurred between 12:00 p.m. and 3:00 p.m.

23.     On the night of May 22, 2019, Plaintiff filed an internal grievance complaining of the events described above in paragraphs 10–21. On May 27, 2019, the grievance was responded to with only the statement, "This has be [*sic*] addressed," and the matter was closed.

24.     Upon information and belief, multiple inmates other than Plaintiff have filed internal grievances or otherwise complained of the events described above in paragraphs 10–21, to no avail.

25.     Defendant Jail Authority, through the leadership of Haysi Regional Jail, including Administrator Johnny Billiter, and Defendant Sheriff reviewed footage of the incident and found that, despite locking Plaintiff and his fellow inmates inside of the transport van in excessively hot and inhumane conditions, with all of the windows rolled up, the doors locked shut, and without any access to water for approximately two hours, Defendant McCoy and Defendant Hall did not act improperly in subjecting Plaintiff and his fellow inmates to excessive heat and inhumane treatment because the inmates were checked on every 30 to 40 minutes. Defendant Jail Authority and Defendant Sheriff thereby ratified Defendant McCoy's and Defendant Hall's actions, respectively.

26.     Following the incident of May 22, 2019, as described above in paragraphs 10–21, Plaintiff continued to suffer headaches for several days. In addition, Plaintiff continues to suffer severe emotional distress and mental anguish and a fear of enclosed spaces such as Haysi Regional Jail's transport van as a consequence of the events described above in paragraphs 10–21.

## CAUSES OF ACTION

### COUNT I – 42 U.S.C. § 1983 – VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (Against Defendant McCoy and Defendant Hall individually)

27.     Plaintiff incorporates by reference herein the preceding paragraphs of this First Amended Complaint.

28.     The Fourteenth Amendment to the United States Constitution provides, among other things, that no "State [shall] deprive any person of life, liberty, or property, without due process of law."

29.     The Due Process Clause of the Fourteenth Amendment requires that pretrial detainees, such as Plaintiff, not be subjected to conditions that amount to punishment nor subjected to deliberate indifference to their serious medical needs, and entitles pretrial detainees, such as Plaintiff, to at least the same right to be free from cruel and unusual punishment as the Eighth Amendment guarantees to convicted inmates.

30.     Defendant McCoy locked Plaintiff in a transport van during extremely hot weather, with the windows shut, without any access to water, and with ventilation at only brief and limited times, for a period of approximately two hours, thereby depriving Plaintiff of his rights to be free from severe discomfort and from the risk of serious bodily harm, including but not limited to heat stroke, and punishment. Defendant McCoy confined Plaintiff under conditions that imposed atypical and significant hardships on him compared with other pretrial detainees.

31.     Defendant Hall, a sergeant with the Buchanan County Sheriff's Office, was aware that Plaintiff was locked in a transport van during extremely hot weather, with the windows shut, without any access to water, and with ventilation at only brief and limited times, for a period of approximately two hours, as the transport van was parked at the Buchanan County Sheriff's Office

7

and as Defendant Hall accompanied Defendant McCoy when he returned to the transport van, even taunting Plaintiff and his fellow inmates, who were screaming and begging for assistance, by holding a soft drink to the window of the vehicle. Defendant Hall thereby deprived Plaintiff of his rights to be free from severe discomfort and from the risk of serious bodily harm, including but not limited to heat stroke, and punishment. Defendant Hall acted in concert with Defendant McCoy to confine Plaintiff under conditions that imposed atypical and significant hardships on him compared with other pretrial detainees

32.     Because Plaintiff was locked inside the transport van and subjected to oppressive, excessive, and inhumane heat, Defendant McCoy and Defendant Hall denied Plaintiff adequate ventilation, air, and water, and caused Plaintiff extreme and unnecessary anxiety and stress about his physical health and safety.

33.     As a direct and proximate result of Defendant McCoy's and Defendant Hall's acts and omissions set forth above, Plaintiff suffered damages, including but not limited to physical pain and suffering, mental distress, fear, and emotional suffering.

34.     Defendant McCoy's and Defendant Hall's conduct was willful, wanton, malicious, and in utter disregard for and deliberate indifference to Plaintiff's legal rights, warranting imposition of punitive damages.

35.     Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to ask the court for reasonable attorneys' fees and costs if Plaintiff prevails.

**COUNT II – 42 U.S.C. § 1985 – CONSPIRACY TO VIOLATE PLAINTIFF'S DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
**(Against Defendant McCoy and Defendant Hall individually)**

36.     Plaintiff incorporates by reference herein the preceding paragraphs of this First Amended Complaint.

37.     The Fourteenth Amendment to the United States Constitution provides, among other things, that no "State [shall] deprive any person of life, liberty, or property, without due process of law."

38.     Defendant McCoy and Defendant Hall conspired to keep Plaintiff locked in a transport van during extremely hot weather, with the windows shut, without any access to water, and with ventilation at only brief and limited times, for a period of approximately two hours, thereby depriving Plaintiff of his rights to be free from severe discomfort and from the risk of serious bodily harm, including but not limited to heat stroke, and punishment. Defendant McCoy and Defendant Hall acted together to confine Plaintiff under conditions that imposed atypical and significant hardships on him compared with other pretrial detainees.

39.     Because Plaintiff was locked inside the transport van and subjected to oppressive, excessive, and inhumane heat, Defendant McCoy and Defendant Hall denied Plaintiff adequate ventilation, air, and water, and caused Plaintiff extreme and unnecessary anxiety and stress about his physical health and safety.

40.     As a direct and proximate result of Defendant McCoy's and Defendant Hall's acts and omissions set forth above, Plaintiff suffered damages, including but not limited to physical pain and suffering, mental distress, fear, and emotional suffering.

9

41.     Defendant McCoy's and Defendant Hall's conduct was willful, wanton, malicious, and in utter disregard for and deliberate indifference to Plaintiff's legal rights, warranting imposition of punitive damages.

42.     Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to ask the court for reasonable attorneys' fees and costs if Plaintiff prevails.

### COUNT III – GROSS NEGLIGENCE
### (Against All Defendants)

43.     Plaintiff incorporates by reference herein the preceding paragraphs of this First Amended Complaint.

44.     Defendant McCoy was the driver of Haysi Regional Jail's transport van and, at all relevant times, Plaintiff was in Defendant McCoy's custody during the events of May 22, 2019, as described above in paragraphs 10–21.  Defendant McCoy owed a duty to Plaintiff to not cause him injury or harm.

45.     Notwithstanding such duties, Defendant McCoy locked Plaintiff in a transport van during extremely hot weather, with the windows shut, without any access to water, and with ventilation at only brief and limited times, for a period of approximately two hours, thereby proximately causing Plaintiff severe discomfort, pain, sweating, sickness, to see spots, and suffer extreme emotional distress and mental anguish due not only to being confined in the excessive heat, but also because Plaintiff was and is prone to seizures.

46.     Defendant McCoy's conduct was grossly negligent in that Defendant McCoy's acts and omissions constituted a complete neglect of Plaintiff's health and safety.

47.     As a direct and proximate result of Defendant McCoy's acts and omissions set forth above, Plaintiff suffered damages, including but not limited to physical pain and suffering, mental distress, fear, and emotional suffering

10

48.     Defendant McCoy's conduct was willful, wanton, malicious, and in utter disregard for and deliberate indifference to Plaintiff's legal rights, warranting imposition of punitive damages.

49.     At all relevant times, Defendant McCoy was acting in the course and scope of his employment with Haysi Regional Jail and the Jail Authority. The Jail Authority is therefore vicariously liable for Defendant McCoy's gross negligence.

50.     Defendant Hall is and, at all relevant times, was a sergeant with the Buchanan County Sheriff's Office, where the Haysi Regional Jail transport van was parked during the events of May 22, 2019, described above in paragraphs 10–21. Defendant Hall owed a duty to Plaintiff to not cause him injury or harm.

51.     Notwithstanding such duties, Defendant Hall was aware that Plaintiff was locked in a transport van during extremely hot weather, with the windows shut, without any access to water, and with ventilation at only brief and limited times, for a period of approximately two hours, as the transport van was parked at the Buchanan County Sheriff's Office and as Defendant Hall accompanied Defendant McCoy when he returned to the transport van, even taunting Plaintiff and his fellow inmates, who were screaming and begging for assistance, by holding a soft drink to the window of the vehicle, and did nothing, thereby proximately causing Plaintiff severe discomfort, pain, sweating, sickness, to see spots, and suffer extreme emotional distress and mental anguish due not only to being confined in the excessive heat, but also because Plaintiff was and is prone to seizures.

52.     Defendant Hall's conduct was grossly negligent in that Defendant Hall's acts and omissions constituted a complete neglect of Plaintiff's health and safety.

53.     As a direct and proximate result of Defendant Hall's acts and omissions set forth above, Plaintiff suffered damages, including but not limited to physical pain and suffering, mental distress, fear, and emotional suffering

54.     Defendant Hall's conduct was willful, wanton, malicious, and in utter disregard for and deliberate indifference to Plaintiff's legal rights, warranting imposition of punitive damages.

55.     At all relevant times, Defendant Hall was acting in the course and scope of his employment with the Buchanan County Sheriff's Office and under the direct supervision of Defendant Sheriff, and all of Defendant Hall's acts and omissions were done *colore officii*. Defendant Sheriff is therefore vicariously and strictly liable for Defendant Hall's gross negligence.

## COUNT IV – WILLFUL AND WANTON CONDUCT
### (Against All Defendants)

56.     Plaintiff incorporates by reference herein the preceding paragraphs of this First Amended Complaint.

57.     Defendant McCoy was the driver of Haysi Regional Jail's transport van and, at all relevant times, Plaintiff was in Defendant McCoy's custody during the events of May 22, 2019, described above in paragraphs 10–21.  Defendant McCoy owed a duty to Plaintiff to not cause him injury or harm.

58.     Notwithstanding such duties, Defendant McCoy locked Plaintiff in a transport van during extremely hot weather, with the windows shut, without any access to water, and with ventilation at only brief and limited times, for a period of approximately two hours, thereby proximately causing Plaintiff severe discomfort, pain, sweating, sickness, to see spots, and suffer extreme emotional distress and mental anguish due not only to being confined in the excessive heat, but also because Plaintiff was and is prone to seizures.

12

59.     Defendant McCoy's conduct was willful and wanton in that Defendant McCoy intentionally and inhumanely confined Plaintiff in an excessively and oppressively hot transport van for a period of approximately two hours, thereby recklessly endangering Plaintiff's health and safety.

60.     As a direct and proximate result of Defendant McCoy's acts and omissions set forth above, Plaintiff suffered damages, including but not limited to physical pain and suffering, mental distress, fear, and emotional suffering

61.     Defendant McCoy's conduct was willful, wanton, malicious, and in utter disregard for and deliberate indifference to Plaintiff's legal rights, warranting imposition of punitive damages.

62.     At all relevant times, Defendant McCoy was acting in the course and scope of his employment with Haysi Regional Jail and the Jail Authority. The Jail Authority is therefore vicariously liable for Defendant McCoy's willful and wanton conduct.

63.     Defendant Hall is and, at all relevant times, was a sergeant with the Buchanan County Sheriff's Office, where the Haysi Regional Jail transport van was parked during the events of May 22, 2019, as described above in paragraphs 10–21. Defendant Hall owed a duty to Plaintiff to not cause him injury or harm.

64.     Notwithstanding such duties, Defendant Hall was aware that Plaintiff was locked in a transport van during extremely hot weather, with the windows shut, without any access to water, and with ventilation at only brief and limited times, for a period of approximately two hours, as the transport van was parked at the Buchanan County Sheriff's Office and as Defendant Hall accompanied Defendant McCoy when he returned to the transport van, even taunting Plaintiff and his fellow inmates, who were screaming and begging for assistance, by holding a soft drink to the

window of the vehicle, and did nothing, thereby proximately causing Plaintiff severe discomfort, pain, sweating, sickness, to see spots, and suffer extreme emotional distress and mental anguish due not only to being confined in the excessive heat, but also because Plaintiff was and is prone to seizures.

65.     Defendant Hall's conduct was willful and wanton in that Defendant Hall intentionally failed to prevent Plaintiff's confinement in an excessively and oppressively hot transport van, even maliciously taunting Plaintiff and his fellow inmates, who were screaming and begging for assistance, by holding a soft drink to the window of the vehicle.

66.     As a direct and proximate result of Defendant Hall's acts and omissions set forth above, Plaintiff suffered damages, including but not limited to physical pain and suffering, mental distress, fear, and emotional suffering

67.     Defendant Hall's conduct was willful, wanton, malicious, and in utter disregard for and deliberate indifference to Plaintiff's legal rights, warranting imposition of punitive damages.

68.     At all relevant times, Defendant Hall was acting in the course and scope of his employment with the Buchanan County Sheriff's Office and under the direct supervision of Defendant Sheriff, and all of Defendant Hall's acts and omissions were done *colore officii*. Defendant Sheriff is therefore vicariously and strictly liable for Defendant Hall's willful and wanton conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

(a)  For Count I, against Defendant McCoy and Defendant Hall, jointly and severally, compensatory damages in the amount of five million dollars ($5,000,000.00), and punitive damages in the amount of five million dollars ($5,000,000.00);

(b)  For Count II, against Defendant McCoy and Defendant Hall, jointly and severally, compensatory damages in the amount of five million dollars ($5,000,000.00), and punitive damages in the amount of five million dollars ($5,000,000.00);

(c)  For Count III, against all Defendants, jointly and severally, compensatory damages in the amount of five million dollars ($5,000,000.00), and punitive damages in the amount of five million dollars ($5,000,000.00);

(d)  For Count IV, against all Defendants, jointly and severally, compensatory damages in the amount of five million dollars ($5,000,000.00), and punitive damages in the amount of five million dollars ($5,000,000.00);

(e)  For reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988; and

(f)  For such further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED.**

Respectfully submitted,

RONALD DEAN CANTRELL

By:      /s/Daniel J. Martin
              Of Counsel

John P. Fishwick, Jr. (VSB #23285)
John.Fishwick@fishwickandassociates.com
Carrol M. Ching (VSB # 68031)
Carrol.Ching@fishwickandassociates.com
Daniel J. Martin (VSB #92387)
Daniel.Martin@fishwickandassociates.com
Fishwick & Associates PLC
30 Franklin Road SW, Suite 700
Roanoke, Virginia 24011
(540) 345-5890 Telephone
(540) 345-5789 Facsimile

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on January 13, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

      By:    <u>/s/ Daniel J. Martin</u>
      Daniel J. Martin (VSB #92387)
      Fishwick & Associates PLC
      30 Franklin Road SW, Suite 700
      Roanoke, Virginia 24011
      (540) 345-5890 Telephone
      (540) 345-5789 Facsimile
      Daniel.Martin@fishwickandassociates.com

16

<u>EXHIBIT A</u>

VIDEO      LIVE      SHOWS      2020 ELECTIONS       

**BREAKING**

House Democrats pass measure limiting Trump's war powers against Iran

# Hospital CEO Leaves Child to Die in Hot Car

By **ABC News**

January 7, 2006, 10:19 AM • 5 min read

July 5, 2001 -- Authorities in Iowa are trying to decide whether to file charges against a hospital CEO whose 7-month-old daughter died after being accidentally left in a minivan while she rushed off to attend meetings.

The county medical examiner has ruled the death accidental, but prosecutors have yet to decide whether to charge Kari Engholm over the death of her daughter Clare.

Engholm left Clare in a minivan last month on a day when outside temperatures approached 90 degrees. Engholm was rushing to attend a series of meetings at Dallas County Hospital in Perry, Iowa.

Engholm's family, it seems, has forgiven her, calling the death a tragic mistake, the result of an overstressed woman who was used to her husband dropping the little girl off with the baby sitter.

"Kari is a loving mother and my best friend," her husband, Dennis, said at a memorial service for Clare last month. "She loved Clare deeply. She always remembers and celebrates our children's milestones."

Prosecutors are expected to decide soon whether a fatal lapse of memory by a woman otherwise considered a good mother could be considered criminal.

Engholm had forgotten she was supposed to have dropped the child at the baby sitter and discovered Clare's body when she picked up her elder son from a child-care center after work, according to The Associated Press.

"It is clear from the facts of this case that there was nothing willful, nothing knowingly done by this parent," William Kutmus, an Iowa attorney who defended a woman accused of criminal negligence for leaving her baby in the bathtub while she went to answer the phone, said today on ABCNEWS' Good Morning America.

In that case, the woman was on the phone long enough to have two cigarettes, and in the meantime her baby drowned.

Need for Emergency Plans

## Top Stories

**Hospital CEO Leaves Child to Die in Hot Car**
Jan 07, 10:19 AM


**House Democrats pass measure limiting Trump's war powers against Iran**
25 minutes ago


**'Highly likely' Iran shot down Ukrainian airliner: US official**
1 hour ago


**Prince Harry and Meghan wax statues moved away from royal family at Madame Tussauds**
Jan 09, 1:32 PM


**Iran launches missiles at US forces in Iraq, Pentagon confirms**
Jan 07, 10:18 PM


● **ABC News Live**



*24/7 coverage of breaking news and live events*

"I think under these circumstances, this case really amounts to at least civil negligence, and probably more of an accident type," Kutmus said of the Engholm case.

The baby sitter who was expecting the child to arrive in the morning called the Engholm home to find out where the girl was, but no one got the message until it was too late.

"I think for any parent who is so overwhelmed with work and in these demands — and there are so many women — you have to have emergency procedures in place," Ann Pleshette Murphy, ABCNEWS' parenting contributor said on Good Morning America. "What if this child had been ill and had to go to the hospital, what would have been the plan? Why wasn't Dad contacted?"

"Those are some of the questions, but this tragedy does strike you to the core because if you are the kind of parent that many women are these days, you can see yourself in a situation where something like this could happen," she added. "It is almost unbelievable, but at the same time there is this little bit of, 'Oh my God, I've been in a situation like this.'"

'A Very Gentle-Natured Soul'

The case is just one in a rash of such incidents this year. Earlier this month, a Southern California foster mother left a 3-year-old girl in a sport utility vehicle for 15 minutes and she died, succumbing to 108-degree temperatures.

In May, a Colorado woman left her 13-month-old son strapped in a baby seat while she went to work at a McDonald's. She is charged with child abuse resulting in death and could face 16 to 48 years in prison.

In March, a Texas woman returned to her car after a day at work at a shopping mall to find her 5-month-old son dead, overcome by heat. She said she was sure she had dropped him off at daycare. Though the temperatures that day only climbed into the 70s, police said the temperature inside the car was probably more than 100 degrees.

When temperatures outside range from 80 degrees to 100 degrees, the temperature inside a car parked in direct sunlight can quickly climb to between 130 to 172, according to the Centers for Disease Control and Prevention. The temperature inside a closed car rises most quickly during the first 15 minutes that it is left in the sun, according to the CDC.

Janice Summerson, a family friend, told the Des Moines Register that Engholm was not the kind of woman to get frazzled under the pressures of her job, even when she was juggling numerous projects.

"I have always known Kari as being a calm, cool, collected, composed, methodical individual," Summerson said. "I guess I've always known she's a very gentle-natured soul."

Comments (173)

abc NEWS

ABC News Network | Privacy Policy | Your CA Privacy Rights | Children's Online Privacy Policy | Interest-Based Ads | Terms of Use | Do Not Sell My Info | Contact Us

Copyright © 2020 ABC News Internet Ventures. All rights reserved.