IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RONALD DEAN CANTRELL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:19-cv-00470 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| CHARLES MCCOY, *et al.*, ) | |
| ) | By:  Hon. Thomas T. Cullen |
| Defendants. ) | United States District Judge |
| ) | |

Plaintiff Ronald Cantrell alleges that, while being transported from the Buchanan County Courthouse to Haysi Regional Jail as a pretrial detainee, he was locked inside a hot van for over an hour, causing heat-related illness and lasting psychological symptoms. He now brings an action alleging that the van driver, a bystander officer, the bystander's supervisor, and the Southwest Virginia Regional Jail Authority violated his Fourteenth Amendment rights and Virginia law during the incident. Defendants now move for summary judgment on Cantrell's claims. Because there remain genuine issues of material fact with respect to whether the driver of the van, Charles McCoy, violated Cantrell's Fourteenth Amendment rights, the court will deny McCoy's motion with respect to those claims. The court will grant Defendants' motions as to all other claims.

## I. BACKGROUND

On May 22, 2019, Plaintiff Ronald Cantrell traveled from Haysi Regional Jail to the Buchanan County Courthouse for his arraignment. Cantrell made the trip along with several other inmates in a van driven by Defendant Charles McCoy, an employee of the Southwest

1

Virginia Regional Jail Authority ("SWVRJA"). On the way back from the courthouse, the van stopped at the Buchanan County Sherriff's office to pick up a trustee for transport to the jail. The van arrived at the Sherriff's office at 2:25 p.m.[1] McCoy turned off the van and went into the Sherriff's office for approximately 13 minutes. When McCoy left, the weather was sunny, and the ambient temperature was 83 degrees Fahrenheit. (*See* ECF No. 78-1 at 3.) According to Cantrell, by the time McCoy returned to the van at 2:38 p.m., the inmates in the van were "burning up" and told McCoy that they needed water. (Dep. of Ronald Cantrell 81:1–81:3, May 13, 2021 [ECF No. 93-1].) McCoy opened the side door to the van, remained standing by the van for roughly 7 minutes, and then shut the door and went back inside the Sherriff's office. According to Cantrell, the open door made little difference in the temperature because of the short time it was open and because McCoy stood in the doorway, blocking airflow. (*See id.* at 130:21–131:4.) McCoy was away from the van for another 15 minutes.

When McCoy returned to the van at 3:00 p.m., he turned on the engine to run the air conditioning and opened a door. By this time, Cantrell alleges that he was nauseated, had a severe headache, and was seeing spots. (*See id.* at 30:18–31:18, 33:24–34:1, 34:24–35:4, 38:1–38:3, 115:18–116:8.) He and the other inmates allegedly pleaded with McCoy for water or some other form of relief by yelling and banging on the side of the van. The air conditioning allegedly failed to reduce the temperature in the idling van, only circulating the already-stifling air. At about 3:09 p.m., Deputy Brandon Hall joined McCoy while he was standing at the van with the air conditioning running. Hall stood near the van for roughly a minute and then

---

[1] The timeline of events, as reproduced here, is taken from security camera footage of the Sherriff's office parking lot. (*See* ECF No. 76-1.)

returned to the office. McCoy turned off the air conditioning, closed the doors, and followed Hall back inside roughly three minutes later, at 3:12 p.m. He returned to the van five minutes later and ran the air conditioning with a door open for ten minutes. Finally, he left the van for the last time at 3:27 p.m., returning less than five minutes later with the trustee.

After the incident, Cantrell claims that he began experiencing nightmares, panic attacks, anxiety, and depression. Several months after the incident, he was seen by a psychiatrist at the jail. She diagnosed Cantrell with Post Traumatic Stress Disorder (PTSD) and adjustment disorder. Cantrell alleges that the psychiatrist informed him—and that the attendant medical reports establish—that his PTSD, anxiety, and depression were caused by the May 22 incident.[2] He also alleges that his nightmares and panic attacks persist to this day and are triggered by things that remind him of being locked in the hot van.

Cantrell brought suit against McCoy, Hall, Raymond Foster (the former Buchanan County Sherriff), and SWVRJA. Cantrell's complaint contains four counts: (1) Fourteenth Amendment due process claims against McCoy and Hall; (2) a 42 U.S.C. § 1985 conspiracy claim against McCoy and Hall; (3) gross negligence claims against McCoy, Hall, Foster and SWVRJA; and (4) willful and wanton conduct claims against McCoy, Hall, Foster, and SWVRJA. (*See* Am. Compl. [ECF No. 19].)

Because the record contains no evidence that Deputy Hall was aware of any wrongful conduct, the court will enter summary judgment in favor of Hall and Foster on all counts. As

---

[2] McCoy contends that this jail psychiatrist, Dr. Jane Dicocco, whom he has designated as an expert witness, failed to explain the causal link between Cantrell's PTSD diagnosis and the van incident in her report. He has separately moved to exclude her as an expert witness under Fed. R. Evid. 702. (*See* ECF Nos. 79, 80.) The court has taken that motion under advisement. For purposes of summary judgment, and in the light most favorable to McCoy, the court construes Dr. Dicocco's report—essentially the medical record associated with her examination of McCoy at the jail—as diagnosing him with PTSD caused by the van incident.

Hall's lack of awareness negates a "meeting of the minds" between himself and McCoy, the court will also enter summary judgment in favor of McCoy on the conspiracy count. Because there is no dispute that McCoy took some ameliorative action to reduce the heat in the van, the court will also enter summary judgment in favor of McCoy and SWVRJA on Cantrell's state-law claims.[3] Because there are genuine issues of material fact with respect to the Fourteenth Amendment claims against McCoy, the court will deny his motion for summary judgment on those claims.

## II. STANDARD OF REVIEW

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477

---

[3] SWVRJA also filed a motion for judgment on the pleadings (ECF No. 73), arguing that it has sovereign immunity against Cantrell's state-law claims for gross negligence and willful and wanton conduct. Because the court concludes that SWVRJA prevails on summary judgment, it need not address the separate legal issue of whether SWVRJA would be immune from these claims.

4

U.S. at 323. If the moving party meets that burden, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

### III. DISCUSSION

#### A. Fourteenth Amendment Due Process Claims

Cantrell brings two Due Process claims against McCoy and Hall: deliberate indifference to medical needs and excessive force.[4] The evidence creates genuine issues of material fact with respect to the claims against McCoy, but the record cannot sustain constitutional claims against Hall.

Pretrial detainees have a constitutional right, enshrined in the Fourteenth Amendment's Due Process Clause, to be free from punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). While states may legally incarcerate individuals awaiting trial, they may not inflict conditions that amount to punishment for crimes of which those individuals have not been convicted. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). A pretrial detainee can prevail on an unconstitutional punishment claim by showing that they were subjected to a condition with "an expressed intent to punish," or by showing that the state's actions in imposing the condition are not "rationally related to a legitimate nonpunitive governmental

---

[4] Defendants argue that Cantrell did not adequately plead an excessive force claim and instead construe it as a conditions-of-confinement claim. The court disagrees. Cantrell's amended complaint pleads a violation of the Due Process Clause of the Fourteenth Amendment on the grounds that "pretrial detainees . . . not be subjected to conditions that amount to punishment. . . ." (Am. Compl. ¶ 29.) Because the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment," Cantrell's references to "punishment"—the extreme conditions in the van and his resulting heat exhaustion—satisfy the pleading requirements for an excessive force claim under Federal Rule of Civil Procedure 8(a). *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). While not foreclosing the possibility that Cantrell could have pleaded a conditions-of-confinement claim under these circumstances, the court finds that Cantrell properly pleaded an excessive force claim instead. *See Patel v. Lanier County Georgia*, 969 F.3d 1173 (11th Cir. 2020) ("[W]e think that placing and holding a detainee in a hot, unventilated, un-air-conditioned van for transport between jails can be understood as an application of force—and can thus be analyzed [as an excessive force claim]—even if it might also have been pleaded (and analyzed) as a conditions-of-confinement.").

purpose" or that the actions "appear excessive in relation to that purpose." *Id.* at 398 (quoting *Bell*, 441 U.S. at 561.)

Relevant here, deliberate indifference to a pretrial detainee's medical needs and the use of excessive force on a pretrial detainee both constitute unlawful punishment. *See id.* at 397 (excessive force); *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) (deliberate indifference). The test for deliberate indifference to a pretrial detainee's medical needs under the Fourteenth Amendment is the same as the test applied under the Eighth Amendment. *See Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004). To prevail on a deliberate indifference claim, a plaintiff must prove two things: "that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).

Demonstrating serious medical need is straightforward. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Demonstrating deliberate indifference is substantially more difficult. A prison official is only deliberately indifferent to a medical need if he or she "knows of and disregards an excessive risk to [the plaintiff's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Meeting this standard requires a plaintiff to show both that the official was actually aware of the risk of harm, and that the official recognized that his or her actions were insufficient. *Iko*, 535 F.3d at 241. "Put differently, the plaintiff must show that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed *and* drew that inference." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016)

(emphasis in original). "Prison officials who actually knew of a substantial risk . . . may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. A defendant's inadequate response, however, can still support a finding of deliberate indifference. *See Simkus v. Granger*, No. 91-6303, 1991 WL 138483, at *2 (4th Cir. July 30, 1991) ("The fact that an inmate has received some care for his condition does not preclude recovery under the eighth amendment.").

The test for use of excessive force, on the other hand, differs from the traditional Eighth Amendment inquiry. The sole question in a Fourteenth Amendment excessive force case brought by a pretrial detainee is whether the force used was "objectively reasonable." *Kingsley*, 576 U.S. at 397–98. An objectively *unreasonable* use of force constitutes punishment in violation of the Fourteenth Amendment. This inquiry must be made from the perspective of an officer on the scene and "turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Factors that bear on the reasonableness of force used include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

1. **McCoy**

    i. **Deliberate Indifference**

There remain genuine issues of material fact with respect to whether McCoy was deliberately indifferent to Cantrell's medical needs. To support his motion for summary

judgment with respect to the deliberate indifference claim, McCoy argues that Cantrell has failed to establish either that he had a serious medical condition or that McCoy was aware of that condition. The court disagrees; the record evidence demonstrates that there is a genuine issue of material fact with respect to both issues. Cantrell alleges that his medical need was one that was "so obvious that even a lay person would easily recognize the need for a doctor's attention." *Iko*, 535 F.3d at 241. McCoy provides no support for his contention that Cantrell's medical condition was not serious, resorting to simply listing Cantrell's reported symptoms (feeling hot, thirst, headache, seeing spots, and nausea). He also points to Cantrell's expert witness, Jan Null, claiming that Null describes Cantrell's symptoms as constituting "mild to moderate illness." (ECF No. 76 at 8.) But Null's report says no such thing. While one article cited to in the expert report describes heat exhaustion as a mild to moderate illness, Null's expert opinion in this case is that "temperatures[,] such as those reached inside this vehicle, are a serious and sometimes fatal health risk." (ECF No. 78-1 at 2.) Moreover, the same article that describes heat exhaustion as a "mild to moderate" illness explains that, if a person's body temperature continues to rise after suffering heat exhaustion, they will be struck with heat stroke, a "life-threatening illness." (*Id.* at 14.) Taking the evidence in the light most favorable to Cantrell, he was dehydrated and well on his way to having a life-threatening condition. McCoy has no evidence of his own to counter these assertions. There is, therefore, a genuine dispute of fact as to whether Cantrell suffered from an objectively serious medical condition on May 22, 2019.

McCoy's argument that he was not subjectively aware of Cantrell's condition is also unpersuasive. He argues that "McCoy had no way to know that Plaintiff was suffering from

9

these symptoms." (ECF No. 76 at 7.) This is directly contradicted by Cantrell's evidence. Cantrell testified that the inmates were screaming at McCoy for help and kicking the sides of the van to get his attention while the doors were closed. (*See* ECF No. 93-1 at 87–89.) A reasonable jury could infer McCoy's knowledge of Cantrell's condition from this testimony, the testimony that Cantrell begged McCoy for water, and the testimony that McCoy was close enough to the van to experience its temperature himself.

Finally, McCoy argues that Cantrell has not demonstrated any serious injury stemming from McCoy's alleged deliberate indifference. This is, once again, directly contradicted by Cantrell's evidence. As noted above, Dr. Jane DiCocco diagnosed him with PTSD based on the trauma he suffered in the van. (*See* ECF No. 93-1 at 13–14.) Cantrell intends to call Dr. DiCocco at trial to support this testimony. This is sufficient to create a genuine dispute of material fact on this issue.

### ii.   Excessive Force

McCoy's only substantive argument against Cantrell's excessive force claim is that McCoy did not use any force against Cantrell and therefore any excessive force claim is barred as a matter of law. (*See* ECF No. 108 at 1–2.) This argument is based on a misunderstanding of the law. Claims that a plaintiff was unnecessarily exposed to the elements, including being locked in a hot vehicle, are routinely analyzed as excessive force claims. *See, e.g.*, *Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Patel v. Lanier Cty. Georgia*, 969 F.3d 1173, 1183 (11th Cir. 2020); *Kassab v. San Diego Police Dep't*, 453 F. App'x 747, 748 (9th Cir. 2011); *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002); *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005); *Smith v. Doe*, No. 617CV799ORL37TBS, 2017 WL 2464126, at *3 (M.D. Fla. June 7, 2017);

*Wilcomb v. City of Houston*, No. CV H-17-1866, 2018 WL 925081, at *4 (S.D. Tex. Feb. 16, 2018). Because McCoy's argument is without merit, and because there are genuine issues of material fact as to whether McCoy applied excessive force to Cantrell, the court will deny McCoy's motion for summary judgment as to this claim.

### 2. Hall[5]

Cantrell's constitutional claims against Hall suffer from an obvious defect: Hall bears no responsibility for the conditions in the van. Cantrell seeks to circumvent this obstacle by arguing that Hall bears bystander liability for the constitutional violations. Bystander liability may be imposed on a law enforcement officer if that officer "(1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002). Cantrell's claims against Hall fail on the first element. There is simply no evidence in the record that Hall was aware of any constitutional violation. The sum total of Hall's involvement with the prisoners in the van is shown on video footage from the Sherriff's office parking lot. He walks out to the van, stands by the van with McCoy for approximately 50 seconds, and then walks back into the Sherriff's office. (*See* ECF No. 76-1 at 15:08–15:10.) The doors of the van were closed the entire time Hall was present. The only relevant evidence shows that Hall was unaware of the temperature in the van, unaware of whether McCoy had run the air conditioner, and unaware of whether the prisoners had water. (Dep. of Brandon Hall at 26:25–29:4, May 12, 2021 [ECF No. 93-3].)

---

[5] Hall asserts qualified immunity against these Fourteenth Amendment claims. Because the court finds Hall bears no responsibility for and had no awareness of the conditions in the van, the court need not address that argument. Interestingly, McCoy did not raise a qualified immunity defense against these constitutional claims. "Qualified immunity is an affirmative defense and . . . 'the burden of pleading it rests with the defendant.'" *Crawford-El v. Britton*, 523 U.S. 574, 587 (1998) (quoting *Gomez v. Toledo*, 446 U.S. 635, 639–41 (1980)). The court, therefore, cannot address whether McCoy has a meritorious qualified-immunity defense.

Cantrell's only argument on this point is that Hall must have been aware of his condition because Cantrell and the other inmates pleaded for help when he was near the van. But the record does not contain any evidence indicating that Hall could hear their pleas. To the contrary, Cantrell testified that he could not hear Hall speaking from inside the van and Hall himself testified that while he could make out noise coming from inside the van, he thought it was the usual racket often made by prisoners. (*See id.* at 28:2–28:10.) Because the record is devoid of evidence showing that Hall was aware that Cantrell was in distress at all—much less that his Fourteenth Amendment rights were being violated—Cantrell cannot make out a constitutional claim against Hall.

**B.     Conspiracy**

For essentially the same reason, Cantrell cannot make out a conspiracy claim against either McCoy or Hall. To demonstrate a conspiracy under 42 U.S.C. § 1985, Cantrell must prove:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

In order to satisfy the first element and prove a conspiracy, a plaintiff must show that there was "an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995). Cantrell cannot show that there was a conspiracy to violate his constitutional rights. The lone fact upon which Cantrell relies to show conspiracy is that Hall walked out and stood beside the transport van.

12

(*See* ECF No. 93 at 17.) This is wholly insufficient to demonstrate that McCoy and Hall agreed to collectively violate Cantrell's rights. And even if the facts could somehow be stretched to show a conspiracy, Cantrell alleges no facts that could tend to show that the conspiracy was motivated by animus toward any class. The record simply contains nothing resembling a conspiracy and the court will grant Defendants' motion for summary judgment on that basis.

**C.    State-Law Claims**

Cantrell brings two state-law claims against all Defendants: gross negligence and willful and wanton conduct. While different causes of action, these two claims simply represent two different levels of negligence under Virginia law. In Virginia, "[g]ross negligence is 'a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person.'" *Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016) (quoting *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004)). In Virginia, "the standard for gross negligence is one of indifference, not inadequacy." *Kuykendall v. Young Life*, 261 F. App'x 480, 491 (4th Cir. 2008). Where the defendant exercised "some degree of care," a gross negligence claim must fail as a matter of law. *Elliott*, 791 S.E.2d at 732. Willful and wanton conduct, on the other hand, is defined as "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Cowan*, 603 S.E.2d at 919 (quoting *Etherton v. Doe*, 597 S.E.2d 87, 90 (2004)).

Virginia's uniquely high standard for gross negligence claims allows a deliberate indifference claim to succeed where a gross negligence claim cannot. This is because, as noted

13

above, deliberate indifference requires that, "once prison officials are aware of a serious medical need, they . . . 'respond *reasonably* to the risk.'" *See Hixson v. Moran*, 1 F.4th 297, 302 (2021) (emphasis added) (quoting *Farmer*, 511 U.S. at 844); *see also Boren v. Nw. Reg'l Jail Auth.*, No. 5:13cv013, 2013 WL 5429421, at *9 (W.D. Va. Sep. 30, 2013) ("A medical professional's decision to employ the easier and less efficacious treatment for an objectively serious medical condition can still amount to deliberate indifference . . . .") (emphasis added); *Grethen v. Clarke*, No. 2:13cv416, 2015 WL 3452020, at *8 (E.D. Va. Mar. 13, 2015) ("Obviously, the provision of some care does not, however, completely inoculate Defendants from a claim that the care rendered was still so inadequate as to constitute deliberate indifference."). In contrast, under Virginia law, merely providing a plaintiff with *some* care will prevent recovery under a gross negligence theory. *See Elliott*, 791 S.E.2d at 732; *Town of Big Stone Gap v. Johnson*, 35 S.E.2d 71, 73 (1945) ("Gross negligence is . . . the absence of slight diligence, or the want of even scant care.").[6]

1. **McCoy and SWVRJA**

Here, the record clearly demonstrates that McCoy was neither grossly negligent nor acted in willful and wanton disregard of Cantrell's rights under Virginia law. As noted above,

---

[6] The court acknowledges that construing the claims of deliberate indifference and gross negligence in this manner stands at odds with the opinions of other judges within this judicial district. *See, e.g.*, *Hixson v. Hutcheson*, No. 5:17-cv-00032, 2018 WL 814059, at *6–7 (W.D. Va. 2018) ("[T]he court will assume that if Hixson has pled a cognizable deliberate indifference claim, he has also pled a cognizable gross negligence claim."). This court finds for the reasons noted above, however, that there is a material distinction between gross negligence, as it currently exists under Virginia law, and deliberate indifference under the Fourteenth Amendment. And the facts of this case fall in the narrow area where a reasonable jury could find McCoy liable for deliberate indifference but not gross negligence, because McCoy took *some* ameliorative, but constitutionally inadequate, measures.

14

"a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Elliott*, 791 S.E.2d at 732. No reasonable person could conclude that McCoy exercised *no* care with respect to Cantrell. Over the course of an hour, he returned to the van to open the door on three occasions and turned on the air conditioning twice. This may be, as Cantrell argues, inadequate given the heat of the day, but it does not constitute "the absence of slight diligence, or the want of even scant care" that defines gross negligence. *Big Stone Gap*, 35 S.E.2d at 73. The record does not show that McCoy completely neglected Cantrell's safety. Therefore, Cantrell cannot sustain an action for gross negligence under Virginia law and the court will grant summary judgment on that claim.

For the same reason, McCoy's conduct was not willful or wanton. Willful and wanton conduct involves an even greater degree of culpability than gross negligence. A plaintiff that fails to prove gross negligence has, by definition, failed to prove willful and wanton conduct. *See e.g.*, *Wilby v. Gostel*, 578 S.E.2d 796, 801 (Va. 2003) ("[N]egligent conduct and willful and wanton conduct merely refer to different degrees of proof that can be applied to the same theory of liability."); *Infant C. v. Boy Scouts of Am., Inc.*, 391 S.E.2d 322, 328 (Va. 1990) ("[G]ross negligence 'falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong.'"); *Alfonso v. Robinson*, 514 S.E.2d 615, 618 (Va. 1999) ("Willful and wanton negligence, unlike gross or ordinary negligence, requires an actual or constructive consciousness that injury will result from the act done or omitted."). "Because [Cantrell] cannot prove gross negligence, he cannot as a matter of law prove willful and wanton negligence." *Kuykendall*, 261 F. App'x at 491.

Finally, because the claims against SWVRJA are based on *respondeat superior*, they rise and fall with McCoy's liability. Cantrell cannot make out these state law claims against McCoy and therefore the court will also enter summary judgment in favor of SWVRJA on these claims.

### 2. Hall and Foster

Similarly, the record cannot support a finding that Hall was grossly negligent or acted with willful and wanton disregard of Cantrell's rights under Virginia law. A defendant must owe a legal duty to a plaintiff for a claim of negligence to succeed. *Jeld-Wen, Inc. v. Gamble*, 501 S.E.2d 393, 396–97 (Va. 1998). Virginia law recognizes that a public official's duty to the public at large does not establish a cognizable legal duty as to a *particular* plaintiff. *See Marshall v. Winston*, 389 S.E.2d 902, 905 (Va. 1990). Cantrell was never in Hall's custody at any relevant time during this incident, and under Virginia law, his status as a public official is alone insufficient to establish a legal duty to Cantrell. Likewise, Hall's presence at the van for less than a minute cannot establish a legal duty owed to Cantrell. The record provides no other facts through which Cantrell could establish that Hall owed him a legal duty. In the absence of a legal duty, Cantrell's claims against Hall for gross negligence and willful and wanton disregard must fail.

Likewise, because the claims against Foster are based on a theory of vicarious liability with respect to Hall, Cantrell also cannot make out these claims and the court will therefore enter summary judgment in favor of Hall and Foster as to all state law claims.

## IV. CONCLUSION

For the foregoing reasons, the court will deny McCoy's motion for summary judgment with respect to Cantrell's Fourteenth Amendment claims and grant McCoy's motion for summary judgment as to the conspiracy and state law claims. The court will enter summary judgment with respect to all claims against Hall, Foster, and SWVRJA. A separate order will issue.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTERED this 9 day of August, 2021.

>     /s/ Thomas T. Cullen
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE